U.S. vs. Smith. I guess it's our final case on the argument. Thank you. Good morning. Mr. Brissenden? Am I saying that right? That's correct. Yes, Your Honor. Thank you. So you've reserved two minutes for rebuttal? I did, Your Honor. Thank you. The floor is yours. Thank you. Matthew Brissenden for the appellant. With the court's permission, I'd like to start with point one of our brief, and the argument here is relatively straightforward. 4A.1.2 of the guidelines is unambiguous on its face, and it provides that a district court cannot enhance a defendant's criminal history based on conduct that is part of the instant offense. So, and we'll get there, obviously, but I just want to clarify out of the gate, this is not an argument that was made to the district court at sentencing, right? So the argument that was made at Just the one you just said now. Yes. That was not made to the court at sentencing, right? The word Kaiser never came out of the attorney's mouth below, right? So there was no citation to Kaiser or the Supreme Court's guidance in Kaiser. But what the argument Or no suggestion that our prior precedent, Stinson, that the Supreme Court's prior precedent, Stinson, had been overturned. There was no exploration of either Stinson or Kaiser, Your Honor. You're correct about that. But there was a substantive argument, which was, Judge, you should be applying 4A.1.2 and not application note 4, right? So counsel did make the argument that the court should not be considering this 2007 state court conviction to enhance the defendant's criminal history. He didn't cite to Kaiser or Stinson in support of that proposition. That is correct. But our position would be that It seemed to me the argument was that there was an unfair double counting going on if you did it this way. And there was also an argument that, well, the probation department didn't apply that when they did the original 2013 sentencing. And so there'd be sort of an estoppel argument. I didn't see any objection to suggest that it would be legal error to apply the application note. I think the legal argument could have been more well-developed, and perhaps counsel should have spent more time developing the basis for his objection, Your Honor. But I would submit But do you think the district court could have understood that that was the basis, that there was an argument that there's a conflict between the application note and the guideline, and the guideline has to be complied with? The heart of what he was asking for was asking for the court to conform to 4A.1.2 and to disregard the application note. That's a hard sell. And it does matter, right? Because that will drive the standard of review. What I would say, Your Honor, I would note that nowhere in the government's brief do they suggest that this is a plain error review. In fact, the government flatly says this is de novo. Well, I'll ask that in a minute. Of course. But ordinarily, if you didn't raise something below and the district court didn't know that it was being asked to make a legal ruling, then the standard of review is going to be plain error. I guess my position would be twofold, Your Honor. My initial position is I believe that the objection that was made below was sufficient to preserve the argument. It's certainly not unusual to have trial counsel articulate an objection to a course of conduct. And on appeal, we come and we offer authority as to why trial counsel was correct in advancing that objection. And I think that's essentially what happened here. Beyond that, Your Honor, my argument would be I think the government has waived the waiver argument under this court's holding in United States v. Carras, 22 F. 3, 489. If the government wanted to advance this argument, it was obliged to do so in its brief. It has not done so. To the contrary, it said this is de novo review. So I think the government has waived any claim regarding preservation. I'll ask Mr. Richards about that. Sure. But, I mean, in your view, would it make a difference? Your Honor, I would submit that under any standard of review, there was prejudicial error in this case. Well, I guess it's, I mean, it seems to me if it's plain error, then it has to be an error that's clear or obvious. And the fact is that there's at least one, and I think other, more than one court that has said that Kaiser did not overrule Stinson. So doesn't that sort of, by definition, mean that this is not clear or obvious? Well, I mean, again- We haven't ruled on this yet. No, as far as I can tell, the circuit has not ruled on this issue yet. It seems to me that the majority of circuits that have looked at this case, there seems to be an emerging consensus that, in fact, Kaiser does apply to an analysis of the guidelines. I will note that, and again, I'm sure the court will say this is a question for the government, the government itself does not advance an argument that Kaiser is inapplicable to the guidelines. I know, Your Honor, that in the 11th, the 9th, the 6th, the 3rd circuits have all followed the reasoning that Kaiser applies, and I think it's almost self-evident. I mean, Stinson says that our deference applies to the guidelines. Kaiser doesn't effectively overrule Stinson, in my view. What Kaiser does is it clarifies what our deference entails. And so necessarily, Your Honor, I think the holding of Kaiser applies here. Again, this is a 2019 decision. It's not like it had just come out. So I would argue, first of all, obviously my position is this was not, it's not a plain error standard, but if compelled to meet that standard, I think, yes, it rises to the level of plain error, Your Honor. A couple of points about the government's position. As I said, they don't dispute that Kaiser applies to this framework. The government doesn't dispute that 4A.1.2 is unambiguous on its face, nor could they. The government doesn't dispute that, in this case, the defendant's criminal history was, indeed, increased based on part of the instant offense. Government essentially concedes all of those points. The argument that it's made from a harmless error standpoint, as far as I can tell, is that the court's dependence on application note 4 merely increased the criminal history from 2 to 3. It didn't actually affect his guidelines. That's clearly untrue, Your Honor. It's clearly untrue for the reasons we laid out in our brief and in our reply brief. There was a five-point swing which resulted from the court's decision to adhere to this application note. It increased his criminal history from 1 to 3. It appears to have increased. Of course, I don't know what was in the judge's mind, but his sentence actually went up at resentencing for both counts 1 and 3. So it appears to have had a concrete effect as well. So this is certainly not a harmless error situation. Certainly, the judge would have been free to impose the same sentence, just saying that, yeah, well, whatever the guidelines say, he is a recidivist because he got convicted in 2007 and continued doing this criminal conduct, right? He could. I think under this court's precedent, if the court miscalculated his criminal history category and his sentence was thereafter increased, I think prejudice has to be presumed under these circumstances. Yeah, but that's part of the problem of not raising the issue cleanly below, right? Because then the judge could have said, you know, there really is this neat little dispute about whether Kaiser overturned Stinson and whether or not the application note is inconsistent with the plain meaning of the guideline and, wow, I've got to decide that. But he could have said it, but it ultimately is not going to make much difference because I'm not following slavishly this guideline. I'm going to impose what I think is the right sentence. And so if you had teeth in you, but if this had been teed up, you were the lawyer below, right? I was not, Your Honor. You were not. I didn't think so. That then gives us the opportunity, gives the district judge an opportunity to make a cleaner record. I wish that it had been better developed below. You know, I'm left with the record that I have. My position is that it was sufficient to alert the court to this issue and this tension. I get your position, yeah. Thank you, Your Honor. I did also want to address, if I could, the government's recent 28J letter in which the government cited to this court's recent decision in the United States v. Chalice. I believe both Judge Lee and Judge Sullivan were on that panel. Some of our best work. So I won't presume to lecture the court about that decision, other than to say that I don't think it's in any way controlling or determinative here for several reasons. Obviously, the court is aware. Chalice involved a different application note, application note 1-4B1.2, which defines crime of violence and controlled substance offenses. And the court held that there was no error in relying on that guidance in that case. But I would submit that the outcome of Chalice was determined by two factors. Number one, plain error standard. As I've said, I don't believe a plain error standard should apply in this case. But number two, the main differential between this case and Chalice is that the court relied and has relied on a string of cases on the prior panel rule. Meaning, there's a case going back to United States v. Jackson, 1995 case for this exact issue. The issue of application note 1-4B1.2 was directly teed up in front of the court. And so in Jackson, the defendant had said the sentencing commission doesn't have the authority to promulgate this application note. They said it's inconsistent under Stinson. This court disagreed. They held there was no inconsistency. They held that note was authoritative. And in a series of cases since Jackson, this court has said we're bound by our prior panel ruling on this issue. The reason I delve into that history is because there's no corollary to Jackson in this case. This court is operating on fresh ground in this case. There is no binding panel precedent as to this tension that we're exploring here between 4A1.2 and 2E and application note 4. There's no case . . . conduct in some cases is going to lead to a higher offense level. I think that's possible, Your Honor. I think . . . In drug cases it might frequently be the case that the first one was big and the later ones were small. I mean, listen, I think it's unpredictable how this might play out in future cases. I will say generally in drug cases . . . That's what we're thinking about though, right?  I think typically in drug cases what you typically see is a pattern of small state court arrests leading up to federal intervention. Something becomes a RICO case. So usually it cuts the other way in drug cases. What I would say at the end of the day, my obligation obviously is to Mr. Smith in advancing this argument on his behalf. But I'll concede that if the court were to adopt this ruling, it could cut either way in future cases, either for or against the government. I don't have anything . . . I don't think further to add. I'm happy to answer any questions that the court might have. Okay. Well, you've got two minutes for rebuttal. Thank you, Mr. Smith. Thank you. Ms. Richards? Now you've done it. It did seem a little wobbly. May it please the court. Monica Richards on behalf of the United States. The issue of deference and the issue of the standard of review here . . . I'm sorry. I'm going to start with the issue of standard of review here. If the court disagrees and finds that this should be reviewed under plain error and that I've made the mistake in arguing with regard to this case that it should be reviewed de novo, then that's okay. Well, you weren't the assistant below either. I wasn't. But it just didn't seem to me like anybody was arguing this issue to the district court, to the district court's detriment. And it just seems funny for us to say, okay, yeah, you blew it, when nobody teed it up. That's what plain error review is for. Yeah. And in this context, this court was the same court that had also sentenced the co-defendant Hampton, and that appeal had already come through to this court. And in that case, Hampton, which is cited in our brief, it was the same application note. It was the same consideration with regard to the calculation of the criminal history category. And so this court had just done that. In that case . . . And you may not know this off the top of your head. In that case, was there a specific reference to Stinson or Kaiser? No. That's sort of my point, Your Honor, is that in that case, with regard to Stinson, this court in its decision . . . I don't want to get it wrong, but in this court's decision in Hampton, we looked at that same guideline. I'm just double-checking because I didn't . . . No, the reference . . . I'm sorry. The reference there was no, not to Stinson. It was back to . . . And the court cites . . . That's right. I'm sorry. I'm so sorry. I wasn't getting there fast enough. Footnote 2 of Hampton cites to the United States versus Hootar. In fact, that was Your Honor's case at the PD's office, and then Judge Jacobs was on that panel. And there . . . Well, I wasn't there. Tell me about it. Sorry? I wasn't there. Tell me about it. Okay. Sorry. So there, it's referenced in footnote 2 as an international parental kidnapping case, but the court did apply Stinson in that case and found exactly what Stinson does, applied the commentary as authoritative unless it violates the Constitution, federal statute, or is inconsistent with or a plainly erroneous reading of that guideline. So that's Stinson. So there, this court in its footnote didn't . . . There was really no question of it. There was no reason to because this has been noted in many other cases now. QSOR didn't overrule even Auer, the question that was presented in the QSOR court. It didn't overrule Auer. It had nothing to do with Stinson except for one little footnote where it talks about deference having been given in other cases. And Stinson itself in its holding . . . Well, Stinson, frankly, predated Booker. So what we have now is we're trying to make this framework fit something which it just simply doesn't. The sentencing guidelines themselves . . . I'm sorry. In the Stinson holding itself, it talks about the fact that the guidelines do things, like in their commentary, explain even unambiguous provisions, right? But do you . . . I mean, it almost sounds as if . . . Well, in your view, what is . . . How are we to . . . What are we to make of QSOR? I mean, because certainly it addresses the question of deference. It's not some completely separate issue. And so it means nothing. It has no impact on Stinson. Is that your view? Well, in the sense that I just was trying to explain, and maybe not so carefully, not so well, but this isn't . . . these aren't laws. Since the decision in Booker, especially, the courts have to think about these things that are stated in the guidelines, the guidelines themselves and the commentary. They have to think about them, but they're not laws. This is different. But we still, even though the guidelines are not mandatory now, we still, to this day, hold that if there's a miscalculation of them, that that can be relevant because of the idea that that's where the district court, presumably, is starting the analysis from. So, yes, it's not law, but it still matters and it can still be a basis for challenge. Right, but that wouldn't be because of Kaiser. QSOR, sorry, QSOR. That wouldn't have changed that, right? Because QSOR . . . It sounded as if you were suggesting that, well, it's not mandatory anymore, so guideline errors are not . . . it doesn't matter. They're not law. That's . . . and perhaps that's not what you meant to suggest. Right. I mean, there's certain things that are wrong with . . . the way that, again, the timeframe and the timeline here, Stinson was way back in 1993, right? And then we had QSOR in 2019. And then we had these two defendants and other defendants since who've been sentenced with regard to these two . . . the interaction between 4A1.2 and Application Note 4 to . . . I just did it wrong . . . 2E1.1. And so . . . and nobody's had a problem with that. And like my colleague said, this has been law since 2019. And we've had not just this co-defendant's case, but there's been other cases in this circuit decided in this circuit that have used these same two interactions to . . . without even thinking about it, to apply . . . to make the same guidelines calculations. In fact, there was a case where they said that they . . . it would . . . it was in a case that I cited in my brief, Mitzell, at page 18 of my brief. None of you judges were on that panel. But there was a defendant in that case, Kilpatrick. And there it was the same sentencing guidelines. I was actually the trial judge. Oh, oh, there we go. Okay, sorry. I can make that connection then. Trial judge. Thank you, judge. But there the . . . and your sentence was upheld because it would have the language . . . They usually are. They usually are. Not always, I will say, sadly. No, go ahead. I'm sorry to interrupt. No, it's all good. So in that case anyway, yes, judge, you were affirmed. And with regard to that, the court here said that the defendant, Kilpatrick, would have us ignore application note four if we sentenced as he'd asked without that RICO application note being considered. So there was really nothing for this court, when it sentenced this defendant, where it had just recently had the Hampton decision affirmed, where there were other cases from this court, not only finding that that was a fair application or a fair rendering of the guidelines, but we also have this court since Stinson, I'm sorry, since Keesor, continuing to apply Stinson. So here I find it an unnecessary rabbit hole for me to go down, where we're talking about a different beast. The sentencing guidelines themselves are different than what's discussed in Keesor and in Auer, all those cases that suggest that where there's a law and an interpretation of that law by the agency, you have to give deference to the agency. That's not what the sentencing guidelines are. The sentencing guidelines are a different beast altogether. They do things like explain in guidelines. They interpret things that are unambiguous. For example, even just 2E1.1 itself, the only thing it says is the base offensive level is 19 for RICO offenses. But then all the meat, the good stuff, is in the application notes, how they're supposed to figure that out or what different things they intend to apply. Those are in the application notes. To read this as my colleague would have it. But the issue is whether an application note contradicts a guideline or is incompatible with it. In that instance you're talking about where the guideline really doesn't say anything, then you look to the application notes and they don't contradict. And that's Stinson. That's correct, Your Honor. That's Stinson. That's different than Keysore, which imposes those four steps, those four hurdles that have to be jumped first. And that's what my colleague was trying to hold me to, that I didn't claim that 4A1.1 was unambiguous. He was shocked that I hadn't done that. But I don't have to because, again, the sentencing guidelines are a different beast. They're meant to be read in conjunction. They're not even laws. So you think our traditional deference practice does not apply to the guidelines? Is that what you're saying? If the traditional deference practice, yes and no. I mean, since Booker, it's hard to say because since Booker, the courts are supposed to, yes, use the guidelines as a starting point and it could be procedural error if there's something wrong, as Your Honor noted. But that doesn't, it's not a law. That's why I'm saying that this is different than those cases that originated from Auer and Seminole Rock. We're not talking about an agency's interpretation. These things were enacted simultaneously, frankly. This commentary has been in there since the beginning. It was enacted at the very same time as the guideline itself. So this isn't, I'm sorry, specifically with regard to 2E1.1. And now it's also different. And now, in terms of the way things are done with the sentencing guidelines, amendments are, in fact, reviewed by Congress. There is a notice and comment time frame. And so it actually is different that way now than it was under Stinson. So to answer the court's question about deference, it's hard to say that there really is even, right now, post, in the world that we're in, post, it actually was decided the same year I started practicing. So in terms of the Booker situation, they're not mandatory. The guidelines simply are not mandatory. They're guidelines. If there's any other questions, I'm out. I think that just to go back to the plain error analysis, I mean, you didn't raise it. That doesn't mean we should disregard it. I mean, judges are not supposed to, are not required to decide things that are not presented to them except for jurisdiction. But it does suggest that, well, why should we assume that parties know whether an issue is coming out of left field or whether it is instinct in the case? And when parties don't raise a plain error, they're basically conceding that the issue was there. I guess that's my problem in this case. Again, if I'm wrong, as the court noted, the court can view it that way. But whether it's wrong by not raising it, the question is whether by not raising it, you're acknowledging that the issue was live and was not unknown or unconsidered by the court. The issue that was raised was that despite the same thing having happened in Hampton, here again, the defense attorney said, this application note should not be applied in this context. So that was my lens and my viewpoint. The Stinson and Keesor situation is something that's come up, but not in this court. If this court looks at its own decisions regarding Keesor, since Keesor has been decided, it's not even a handful. And in every case, it's rejected a finding that Keesor has any significance with regard to the sentencing guidelines applications. That would be, I'm relying on Winn when I say that. I'm relying on this court's decision, again, in Hampton itself, in Hootar, where the court applied Stinson. And so, and again, it still comes back to, it wasn't plain, it wasn't error, but it still comes back to prejudice and harmlessness. And I do have an argument in my brief that this wouldn't be the case anyway for this court to even come near this issue because any mistake here was harmless. With regard to this guidelines calculations, whether he was a two, a criminal history category two, or a criminal history category three, we're still at the same range of 360 months to life in terms of the starting point. And then here, this judge did take to heart the arguments that were made with regard to prior sentence and rehabilitation and went lower still. So, as your honor noted, it is also possible in a different case where this court to throw away its prior decisions with regard to application note four, that it would actually not be good for other defendants. All right. Well, thank you, Ms. Richards. We'll hear from Mr. Brisson for two minutes of rebuttal. Maybe you want to just start where she left off, which is that there would be no prejudice. You did touch on this earlier, but just again, walk us through why it is that the guidelines are definitely different depending on the application of 4A1.1. So, I mean, and the clearest evidence of this is that at the original sentence, the judge didn't apply this application note and found him to be in criminal history one. But as far as the simple math goes, he received three criminal history points for the offense itself. He received another two points because he was on probation due to that 2007 offense. Combined, that's five criminal history points that are added due to the court's deference. I think your point is that those extra, it may not have made a difference if it's just the three, but if you add the two. It's five. And it's different. And two, the extra two, turns on the definition of whether or not the 2007 offense was a prior offense. They all follow from the exact same argument, Your Honor. That's correct. Okay. Just briefly, and I don't know if the government was contending that this court has previously held or suggested that Kaiser doesn't modify Stinson or that Kaiser doesn't apply- No, we're still applying Stinson. At least I think that was the point Ms. Richards was making. We're still citing it all over the place. And so, not in this particular situation we have. That would be an issue of first impression. My view is that Kaiser doesn't necessarily overrule Stinson, but clarifies it and hones it and explains how it should be applied in this context. I will note that- Kaiser's got nothing to do with the sentencing guidelines, right? Well, on its face, no. I mean, it's not a case involving the sentencing guidelines. No, absolutely right. It's a two-step process to get to where we are. Yeah, so what is the response to Ms. Richards' point that it's not even applicable because the sentencing commission and the guidelines are different? They're different than, what was it, I think Veteran Affairs, I think was Kaiser, right? Right. She says Kaiser, and I'm saying Kaiser. I'm saying Kaiser as well. We're going with Kaiser. I assume the government knows better than I do. What I'd say is, and I think I mentioned this before, the 11th, 9th, 6th, and 3rd Circuits all disagree with the government. And I'm happy to provide those citations if the court would like them. United States v. Well, they disagree with the government, right? They agree that Kaiser has, the Kaiser framework applies to an understanding of how the guidelines should work. They've applied it to guidelines. But they don't have, I guess, well, I mean, the 11th Circuit seemed to have addressed this issue and come out the other way, right? The case that I was looking at was United States v. Dupree, 57F4-1269, which did apply, I believe, Kaiser to the commentary of 4B1.2. So, and I think the closest this court has come, actually, is there was a case, United States v. Hopper, where really this exact issue was teed up for the court. And the court sort of sidestepped it by not addressing the issue of whether or not Kaiser applies. It said instead, well, in this case, really, the underlying conduct, this prior state conviction was not actually part, factually, was not part of the federal offense, and therefore, we don't have to address it. Well, candidly, I do think that's why the standard review does matter. I mean, I'm not sure if the standard review is plain error, and we conclude that this was not obvious. It might be right, but it's not obvious. Then I don't think it's appropriate for, you tell me, is it appropriate for us to nonetheless just forge ahead and decide this as though it's up to us on de novo review? I think, Your Honor, that certainly if I had failed to raise, you know, a key point or a fundamental argument in one of my briefs, I would expect to hear from the government that I've waived that issue. No, no, that's the waiver of waiver point, which, you know, that is a different set of precedents. But I'm just saying if clear error is the standard, absent a waiver issue, do we get to nonetheless decide that Kaiser does or doesn't apply here if we can conclude and would conclude that, well, it's not obvious. You know, this is a horse race. I guess my position is under either standard it would meet either the plain standard error or plain error standard or under de novo review. I think in either case the district court erred. And so I guess my answer would not change regardless of the standard which the court deems appropriate. You know, there's a, and I'm sort of loathe to bring any of these issues up because I didn't raise them in my initial brief, but we do have some additional arguments. I don't know if the court has any questions about other aspects of the sentencing, including the court's failure to provide credit for the time which the defendant previously spent in state custody. But I didn't give the government an opportunity to respond to that. So I'm somewhat reluctant to bring it up on reply, but. They're in the brief. They are in the brief. So I just wanted to make sure the court didn't have any questions about those issues. No, I don't think so. We've already filed arguments, so thank you both. Okay. All right, we'll reserve decision. Thank you. Thank you.